**NOS. 21-3981/21-3991**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

STEVE SNYDER-HILL; RONALD MCDANIEL; DAVID MULVIN;
WILLIAM BROWN; KURT HUNTSINGER; WILLIAM RIEFFER;
STEVE HATCH; KELLY REED; MELVIN ROBINSON; DOUGLAS WELLS;
JAMES KHALIL; JERROLD L. SOLOMON; JOSEPH BECHTEL;
MICHAEL MURPHY; JOHN DAVID FALER; MATT MCCOY; GARY AVIS;
ROBERT SCHRINER; MICHAEL MONTGOMERY; JOHN DOES, 1-22, 25, 27,
29-37, 39-47, 49, 52, 54, 56-60, 62-64, and 66-77,

*Plaintiffs-Appellants* (No. 21-3981)

AND

TIMOTHY MOXLEY; RYAN CALLAHAN; JOHN JACKSON, JR.;
JAMES CARROLL; PATRICK MURRAY; EVERETT ROSS; JOHN DOES 78,
82-84, 88-92, 94-95, 97-99, 101, 103-104,

*Plaintiffs-Appellants* (No. 21-3991)

v.

THE OHIO STATE UNIVERSITY,

*Defendant-Appellee.*

Consolidated on Appeal from the U.S. District Court, Southern District of Ohio,
Eastern Division Case Nos. 2:18-cv-00736 (21-3981); 2:21-cv-03838 (21-3991)

---

**PLAINTIFFS-APPELLANTS' RESPONSE TO**
**PETITION FOR REHEARING EN BANC**

---

ILANN MAAZEL
EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
*(continued on following page)*

Debra L. Greenberger
Marissa R. Benavides
EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: mbenavides@ecbawm.com

SCOTT ELLIOT SMITH, LPA
Scott E. Smith (0003749)
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail: ses@sestriallaw.com

PUBLIC JUSTICE, P.C.
Adele P. Kimmel
Alexandra Z. Brodsky
1620 L Street NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net
E-mail: abrodsky@publicjustice.net

*Attorneys for Plaintiffs-Appellants*

## TABLE OF CONTENTS

<u>PAGE NO.</u>

TABLE OF AUTHORITIES ................................................................... ii-v

INTRODUCTION .................................................................................1

BACKGROUND ...................................................................................2

STANDARD FOR PETITION FOR REHEARING EN BANC ..............................4

ARGUMENT .......................................................................................4

    I.    THE COURT SHOULD NOT REHEAR THIS CASE EN BANC
          TO RECONSIDER THE PANEL'S STATUTE OF LIMITATIONS
          HOLDING. ................................................................................4

    II.    THE COURT SHOULD NOT REHEAR THIS CASE EN BANC
          TO RECONSIDER THE PANEL'S HOLDING ABOUT
          TITLE IX'S APPLICATION TO NON-STUDENTS. .......................13

CONCLUSION ...................................................................................15

CERTIFICATE OF COMPLIANCE.......................................................17

CERTIFICATE OF SERVICE ..............................................................18

## TABLE OF AUTHORITIES

<div align="right">PAGE NO.</div>

**Cases**

*Barrett v. United States*,
689 F.2d 324 (2d Cir. 1982) ........................................................... 7, 9, 11, 12

*Bishop v. Children's Ctr. for Developmental Enrichment*,
618 F.3d 533 (6th Cir. 2010) ........................................................ 6, 9, 10, 12

*Bostock v. Clayton Cty.*,
140 S. Ct. 1731 (2020) ...................................................................................15

*Campbell v. Grand Trunk W. R. Co.*,
238 F.3d 772 (6th Cir. 2001) .................................................................. 6, 12

*Chappell v. Rich*,
340 F.3d 1279 (11th Cir. 2003) ......................................................................7

*Doe v. Brown Univ.*,
896 F.3d 127 (1st Cir. 2018).................................................................. 13, 15

*Doe v. Claiborne Cnty.*,
103 F.3d 495 (6th Cir. 1996) ................................................................. 14, 15

*Doe v. Univ. of Kentucky*,
971 F.3d 55 (6th Cir. 2020) ..........................................................................14

*Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*,
693 F.3d 1303 (10th Cir. 2012) ....................................................................14

*Fonseca v. Consol. Rail Corp.*,
246 F.3d 585 (6th Cir. 2001) .................................................................. 6, 10

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
503 U.S. 60 (1992)........................................................................................10

*G.G. Marck & Assocs., Inc. v. Peng*,
762 F. App'x 303 (6th Cir. 2019)..................................................................10

*Georgia-Pac. Consumer Prod. LP v. NCR Corp.*,
40 F.4th 481 (6th Cir. 2022) ...........................................................................8

*Gregg v. Haw., Dep't of Pub. Safety*,
    870 F.3d 883 (9th Cir. 2017) ............................................................7

*Hogan v. United States*,
    42 F. App'x 717 (6th Cir. 2002) ............................................. 6, 10

*Horner v. Ky. High Sch. Athletic Ass'n*,
    43 F.3d 265 (6th Cir. 1994) ...........................................................14

*In re Copper Antitrust Litig.*,
    436 F.3d 782 (7th Cir. 2006) ...........................................................7

*Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of Am. v. Kelsey-Hayes Co.*,
    872 F.3d 388 (6th Cir. 2017) ...........................................................5

*Issa v. Bradshaw*,
    910 F.3d 87 (6th Cir. 2018) .............................................................4

*Johnson v. Chudy*,
    822 F. App'x 637 (9th Cir. 2020) ...................................................8

*King-White v. Humble Indep. Sch Dist.*,
    803 F.3d 754 (5th Cir. 2015) .........................................................11

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*,
    944 F.3d 613 (6th Cir. 2019) .........................................................10

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ..........................................................11

*Lawson v. Rochester City Sch. Dist.*,
    446 F. App'x 327 (2d Cir. 2011) ...................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).......................................................................13

*Lillard v. Shelby Cnty. Bd. of Educ.*,
    76 F.3d 716 (6th Cir. 1996) ...........................................................10

*Lupole v. United States*,
    No. 20-1811, 2021 WL 5103884 (4th Cir. Nov. 3, 2021)...............8

*Miller v. United States,*
    932 F.2d 301 (4th Cir. 1991) ............................................................7

*Mitts v. Bagley,*
    626 F.3d 366 (6th Cir. 2010) ...........................................................4

*Momenian v. Davidson,*
    878 F.3d 381 (D.C. Cir. 2017)..........................................................7

*North Haven Board of Education v. Bell,*
    456 U.S. 512 (1982)........................................................................14

*Ouellette v. Beaupre,*
    977 F.3d 127 (1st Cir. 2020)..................................................... 7, 8, 9

*Parsons v. CSX Transp., Inc.,*
    477 F. App'x 304 (6th Cir. 2012).............................................. 6, 10

*Patterson v. Chrysler Grp., LLC,*
    845 F.3d 756 (6th Cir. 2017) ...........................................................10

*Pennhurst State Sch. & Hosp. v. Halderman,*
    451 U.S. 1 (1981)..............................................................................10

*Pinaud v. Cnty. of Suffolk,*
    52 F.3d 1139 (2d Cir. 1995) ...........................................................11

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) .................................................. 7, 9, 11

*Rotella v. Wood,*
    528 U.S. 549 (2000)................................................................ 6, 12

*Rotkiske v. Klemm,*
    140 S. Ct. 355 (2019)...................................................................7, 8

*Snyder-Hill v. Ohio State Univ.,*
    48 F.4th 686 (6th Cir. 2022) ................................................. *passim*

*Sohm v. Scholastic Inc.,*
    959 F.3d 39 (2d Cir. 2020) ...........................................................8, 9

*Tengood v. City of Philadelphia*,
 529 F. App'x 204 (3d Cir. 2013) ..................................................................11

*Twersky v. Yeshiva University*,
 579 F. App'x 7 (2d Cir. 2014) ......................................................................11

*United States v. Huntington Nat. Bank*,
 574 F.3d 329 (6th Cir. 2009) ..........................................................................9

*United States v. Kubrick,*
 444 U.S. 111 (1979)............................................................................... 11, 12

*Varnell v. Dora Consol. Sch. Dist.*,
 756 F.3d 1208 (10th Cir. 2014) ......................................................................7

**Rules**

Sixth Cir. I.O.P. 35(a) .............................................................................4, 5

**Statutes**

20 U.S.C. § 1681(a) ............................................................................... 1, 18

20 U.S.C. § 1687 ..........................................................................................19

42 U.S.C. § 1983 ................................................................................. 7, 11, 15

## INTRODUCTION

Last month, this Court published a thoroughly reasoned opinion that arrived at a commonsense conclusion: Plaintiffs' claims against Ohio State University accrued when they knew or should have known they had been injured and OSU had caused that injury. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698-707 (6th Cir. 2022). That result was dictated by this Court's long-standing precedent. It also accords with the views of every other court of appeals to address similar questions about statutes of limitations. And the Court's application of that uncontroversial rule to this case was fact-bound.

The Court also ruled, as to four of the 107 Plaintiffs who were neither OSU students nor employees, that Title IX of the Education Amendments of 1972 means what it says: "[n]o *person*" shall be excluded from participation, denied benefits, or subjected to discrimination on the basis of sex. *Id.* at 707-09 (quoting 20 U.S.C. § 1681(a) (emphasis added)). On its face, Title IX's protections extend beyond students and employees—the only two classes of people that OSU thinks can bring claims under Title IX. *Id.*

Unhappy, OSU urges this Court to reconsider this unexceptional result en banc. In doing so, it invents non-existent circuit splits, misrepresents the law, and attempts to rewrite Title IX's plain language. OSU also raises, for the first time, new arguments that are both forfeited and wrong. Because OSU has not provided a

1

genuine and preserved ground for rehearing en banc, and because the panel opinion is correct, the Court should deny the petition.

## BACKGROUND

The factual and procedural background of these cases are detailed at length in this Court's opinion and Plaintiffs' previous briefing. This appeal concerns OSU's decades of complicity in serial sexual abuse. Over the course of twenty years, OSU's official athletics doctor, Richard Strauss, abused hundreds of men and boys, most of them student-athletes. Compl. ¶ 3, R.123 at 1989.[1] In nearly every case, Strauss disguised his abuse as medical care. *Id.* ¶¶ 3 at 1989; 272 at 2036-37. When he digitally penetrated John Doe 62's anus, Strauss told the student he was conducting a "prostate exam." *Id.* ¶¶ 2212-13 at 2298. Strauss told eighteen-year-old John Doe 24 he needed to do a "hernia check"—an exam he'd never experienced before—and then groped the freshman's penis and testicles. *Id.* ¶¶ 1458-1463 at 2187. The operative complaints include dozens of stories like this.

As an OSU-commissioned report by Perkins Coie found, and as Plaintiffs allege, OSU knew about Strauss's abuse starting as early as 1979. *Id.* ¶ 5, R.123 at 1989. "[A]lthough Ohio State received 'persisten[t], serious[ ], and regular[ ]' complaints from students, it took 'no meaningful action . . . to investigate or address the concerns'" for nearly twenty years. *Snyder-Hill,* 48 F.4th at 692 (citation omitted).

---

[1] Citations refer to the relevant document in the *Snyder-Hill* appeal, No. 21-3981.

When one Plaintiff reported an assault by Strauss, OSU insisted, falsely, that it "had never received a complaint about Strauss before." Compl. ¶ 320 at 2045-46. Even after "OSU quietly suspended Strauss" in 1996, OSU "hid the *reason* why it was investigating Strauss and placing him on leave, … destroy[ed] medical records,' and shredded files related to Strauss's sexual abuse." *Snyder-Hill,* 48 F.4th at 692 (citation omitted).

In 2018, a few former student-athletes spoke out about Dr. Strauss's abuse. Compl. ¶¶ 270-71, R.123 at 2036. OSU then launched an investigation into both Strauss' alleged sexual abuse and OSU's role in enabling that abuse. *Id.* ¶¶ 273-74 at 2037. From this publicity, Plaintiffs became aware of OSU's culpability and most Plaintiffs realized for the first time that Strauss' medical examinations were, in fact, sexual abuse. App. 1, R.133-1 *passim*.

Soon after, Plaintiffs filed the two Title IX actions now consolidated on appeal. *Snyder-Hill,* 48 F.4th at 697. To state claims under Title IX, Plaintiffs had to plead that OSU had actual knowledge of Strauss' abuse and was deliberately indifferent to it, not just that Strauss was an employee. *See id.* at 702-03, 705; Opening Br. 19, 40-41. All Plaintiffs alleged that they did not know about OSU's role in their abuse until 2018, and could not have discovered it earlier. *Snyder-Hill,* 48 F.4th at 694. Most Plaintiffs also alleged that, until 2018, they did not understand that Strauss had abused them, since he had disguised his abuse as medical exams. *Id.* at 693.

The District Court dismissed the cases based on OSU's affirmative defense that the claims were untimely. *See Snyder-Hill,* 48 F.4th at 697. A panel of this Court reversed. *Id.* at 709.

## STANDARD FOR PETITION FOR REHEARING EN BANC

"A petition for rehearing en banc is an extraordinary procedure intended to bring to the attention of the entire court a precedent-setting error of exceptional public importance or an opinion that directly conflicts with Supreme Court or Sixth Circuit precedent." Sixth Cir. I.O.P. 35(a). Rehearing en banc is not warranted to correct "[a]lleged errors" concerning "the facts of the case" or application of precedent. *Id.*

As Chief Judge Sutton has noted, en banc review should be reserved only for "the rarest of circumstances." *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, J., concurring in the denial of rehearing en banc). "The trust implicit in delegating authority to three-judge panels to resolve cases as they see them would not mean much if the delegation lasted only as long as they resolved the cases correctly as others see them." *Issa v. Bradshaw*, 910 F.3d 872, 877-78 (6th Cir. 2018) (Sutton, J., concurring in the denial of rehearing en banc).

## ARGUMENT

## I.    THE COURT SHOULD NOT REHEAR THIS CASE EN BANC TO RECONSIDER THE PANEL'S STATUTE OF LIMITATIONS HOLDING.

1. In determining that Plaintiffs adequately pleaded that they did not know either their injury or its source until 2018, the panel decided a fact-bound question

inappropriate for en banc review. OSU disputes it is plausible that, until recently, all Plaintiffs did not know about OSU's role in the abuse, and most did not know they had been sexually abused. Pet. 13-15. This Court was right that the allegations are plausible, especially given the unique characteristics of doctor-patient abuse. *Snyder-Hill*, 48 F.4th at 706. But regardless, that question is one about the unique facts of this specific case. And "[a]lleged [factual] errors . . . are . . . not [matters] for rehearing en banc." Sixth Cir. I.O.P. 35(a); *see also Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of Am. v. Kelsey-Hayes Co.*, 872 F.3d 388, 389 (6th Cir. 2017) (Gibbons, J., concurring in denial of rehearing en banc) (noting a "factual focus hardly presents a question of exceptional importance" worthy of en banc review). If en banc review were appropriate to consider whether every complaint meets *Iqbal/Twombly*'s general pleading requirements, the full Court's attention would be consumed by appeals from motions to dismiss. Even OSU's *amici* do not believe review is warranted on these grounds. *See* Br. of *Amici Curiae* at 3-9.

2. The panel's application of the discovery rule to this case is unworthy of en banc review because it is consistent with the law of this Circuit, other circuits, and the Supreme Court. Here, the panel merely reaffirmed that the Sixth Circuit, like every other appellate court to consider the issue, applies the discovery rule to statutes, like Title IX, that are silent as to accrual.

This Court has held repeatedly that "the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (citation omitted); *see also, e.g.*, *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 588 (6th Cir. 2001) (same); *Campbell v. Grand Trunk W. R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) (same); *Parsons v. CSX Transp., Inc.*, 477 F. App'x 304, 305 (6th Cir. 2012) (same); *Hogan v. United States*, 42 F. App'x 717, 724 (6th Cir. 2002) (applying same rule). Under this rule, a plaintiff's claim accrues when he knows his injury and the defendant's role in causing it—not, as OSU wrongly argues, when he understands that he has a legal claim. *See Snyder-Hill*, 48 F.4th at 701 (explaining "'a plaintiff's ignorance of his legal rights' is different from 'his ignorance of the fact of his injury or its cause'" (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000))).

Consistent with this "general principle," this Court has "long held that the discovery rule applies in the § 1983 context." *Id.* at 698 (collecting cases). And "the analysis concerning when the statute of limitations for a Title IX claim began to run is the same as for a § 1983 claim." *Id*. (cleaned up). The application of the discovery rule to Title IX is an unremarkable application of binding Sixth Circuit law.

Other courts of appeals agree that, absent a statutory directive to the contrary, a claim does not accrue until a plaintiff knows both (1) "[t]he existence of the

injury;" and (2) "the connection between the injury and the defendant's actions." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *see also, e.g.*, *Ouellette v. Beaupre*, 977 F.3d 127, 136 (1st Cir. 2020) (same); *Momenian v. Davidson*, 878 F.3d 381, 388 (D.C. Cir. 2017) (same); *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (same); *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982) (same); *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (same); *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (same); *Miller v. United States*, 932 F.2d 301, 304 (4th Cir. 1991) (same); *Snyder-Hill*, 48 F.4th at 701 (collecting cases).

Appellate courts have, naturally, applied this rule in Title IX cases. *Snyder-Hill*, 48 F.4th at 699 (collecting cases). District courts have, too. *Id.* at 703-04 (discussing "two sets of well-reasoned district court opinions"). In the one opinion OSU cites as creating a putative split, the Tenth Circuit merely declined to decide whether the discovery rule applied since it would not affect the result. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014).

"*Rotkiske*," too, "is inapposite." *Snyder-Hill*, 48 F.4th at 699. "In *Rotkiske*, the Court's analysis both started and ended with the text of the FDCPA, which expressly states that the statute of limitations starts on 'the date on which the violation occurs.' The Court therefore concluded that importing the discovery rule would amount to "[a]textual judicial supplementation."" *Id.* (quoting *Rotkiske v. Klemm*, 140 S. Ct.

7

355, 358, 361 (2019)). "Thus, *Rotkiske* has no bearing on a case about the accrual of Title IX claims because Title IX's text contains no statute of limitations at all." *Id.* at 700. On this, also, the courts of appeals are in agreement. *Sohm v. Scholastic Inc.*, 959 F.3d 39, 50 n.2 (2d Cir. 2020) (Sullivan, J.) (explaining *Rotkiske* does not pose an obstacle to application of the discovery rule where a statute is silent on accrual); *Ouellette*, 977 F.3d at 140 (applying federal discovery rule after *Rotkiske*); *Johnson v. Chudy*, 822 F. App'x 637, 638 (9th Cir. 2020) (same); *Lupole v. United States*, No. 20-1811, 2021 WL 5103884, at *1 (4th Cir. Nov. 3, 2021) (same). "No appellate court has held that *Rotkiske* did away with the common-law discovery rule when a statute is silent." *Snyder-Hill*, 48 F.4th at 700; *see also* Reply Br. (distinguishing other cited Supreme Court cases).

3. OSU throws a bunch of new arguments at the wall to see what sticks. It says, for instance, that the discovery rules applies only to four specific types of cases, excluding Title IX suits. Pet. 7-8. It suggests that the statute of limitations for Title IX claims should actually be assessed like a contract claim. *Id.* at 6. It insists, too, that the discovery rule is one-pronged rather than two-pronged and that ignorance of a defendant's role is irrelevant. *Id.* at 10-11. OSU did not make these arguments at any prior point in the litigation; all are forfeited. *See generally* Response Br.; *see also, e.g.*, *Georgia-Pac. Consumer Prod. LP v. NCR Corp.*, 40 F.4th 481, 483 (6th Cir. 2022) (noting an argument "may not be raised for the first time in a petition for

rehearing"); *United States v. Huntington Nat. Bank*, 574 F.3d 329, 331 (6th Cir.

2009) (similar). If OSU thought these issues were so exceptionally important as to

deserve this Court's attention en banc, it should have raised them before the panel.

OSU's unpreserved arguments are also wrong on the law. *First,* neither this

Court nor any other has limited the discovery rule to the specific classes of cases

identified by OSU. *See, e.g.*, *Bishop*, 618 F.3d at 536-37 (applying discovery rule to

Rehabilitation Act and § 1983 claims); *Ouellette*, 977 F.3d at 144 (applying discov-

ery rule to § 1983 sexual abuse claim); *Sohm*, 959 F.3d at 49-51 (applying discovery

rule to copyright infringement case); *Piotrowski*, 237 F.3d at 577 (applying discov-

ery rule to § 1983 state-created danger case). As the Second Circuit has explained,

even if the discovery rule is most often applied to certain types of suits, it is appro-

priate for other cases "where plaintiffs face comparable problems in discerning the

fact and cause of their injuries." *Barrett*, 689 F.2d at 327. To limit the discovery rule

as OSU proposes would create both intra- and inter-circuit splits with the above-

cited cases.[2]

*Second*, the Spending Clause does not change how Plaintiffs' claims accrue.

For starters, although the Spending Clause functions like a contract, courts do not

look to contract law to resolve every Title IX question. *See Kollaritsch v. Michigan*

---

[2] Even under OSU's new taxonomy, Plaintiffs' claims would succeed. Both
Strauss's abuse and OSU's cover-up sound in fraud, even if the panel did not, as
OSU demands, use that magic word. Pet. 8.

*State Univ. Bd. of Trustees*, 944 F.3d 613, 620-23 (6th Cir. 2019) (analogizing Title IX claim to tort). Binding circuit precedent makes clear that Title IX's statute of limitations borrows from state personal injury claims. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996). That precedent post-dates the Supreme Court's recognition that Title IX is a Spending Clause statute, *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 74 (1992), and that the Spending Clause is "in the nature of a contract," *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Besides, whatever state statute of limitations Title IX borrows, the claim accrues according to *federal* accrual law. *Bishop*, 618 F.3d at 536. OSU's only cited case concerns Ohio *state* accrual for contract claims. Pet. 5 (quoting *G.G. Marck & Assocs., Inc. v. Peng*, 762 F. App'x 303, 308 (6th Cir. 2019)). In fact, this Court applies the discovery rule to federal claims that borrow state contract law statutes of limitations. *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763-64 (6th Cir. 2017). And it has applied the discovery rule to another Spending Clause statute, the Rehabilitation Act of 1973. *Bishop*, 618 F.3d at 536-37.

*Third*, this Court, and the Supreme Court, have been clear that, under the discovery rule, a claim accrues when a plaintiff discovers "*both* his injury *and* the cause of that injury"—not, as OSU says, injury alone. *Id.* at 536 (emphasis added) (citation omitted); *see also Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001) (same); *Parsons*, 477 F. App'x at 305 (same); *Hogan*, 42 F. App'x at 724-25 (same);

*United States v. Kubrick,* 444 U.S. 111, 122 (1979) (noting "critical facts" plaintiff must know for claim accrual are that plaintiff "has been hurt and who has inflicted the injury"). "This approach is the same as the seven other circuits to address this issue." *Snyder-Hill*, 48 F.4th at 701 (collecting cases).

OSU is flat wrong that this rule conflicts with the law of the Second, Third, and Fifth Circuits. Conspicuously, OSU never actually says that these circuits use a single-prong discovery rule. That's because none of the cases OSU cites address that issue, and the Second and Fifth Circuits have expressly endorsed a two-prong discovery rule. *E.g.*, *Piotrowski*, 237 F.3d at 577; *Barrett*, 689 F.2d at 327-29; *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).[3] OSU is also wrong that the

---

[3] *King-White* applied the two-prong discovery rule to a post-assault claim that was nonetheless time-barred. *King-White v. Humble Indep. Sch Dist.*, 803 F.3d 754, 762-63 (5th Cir. 2015); *see also* Opening Br. 49 (contrasting post-assault claims and Plaintiffs' pre-assault claims). Another post-assault case, *Twersky v. Yeshiva University*, did not decide whether the discovery rule applied, let alone hold discovery of injury alone suffices. 579 F. App'x 7, 9 (2d Cir. 2014) (unpublished). Two other unpublished opinions not only left the question here unaddressed, but concern a distinct "delayed accrual" rule. *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011); *Tengood v. City of Philadelphia*, 529 F. App'x 204, 210 (3d Cir. 2013). OSU never cited *Lawson* or *Tengood* in prior briefing, so the parties have not previously addressed the differences between the discovery rule and the "delayed accrual" rule. But OSU's own cases acknowledge they are distinct. *King-White*, 803 F.3d at 762-63 (applying discovery rule and then declining to apply distinct "delayed accrual" rule); *Tengood*, 529 F. App'x at 210 n.5 (contrasting "delayed accrual" from discovery rule). The "delayed accrual" rule is specific to *Monell* claims against a municipality, though the scope and continued viability of the rule is unclear. *Compare Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) *with Lawson*, 446 F. App'x at 329. There is no question, though, that the Second Circuit has

Supreme Court has held that knowledge of injury alone suffices for accrual. As the panel explained, "*Rotella* does not undercut *Kubrick*'s understanding that a plaintiff must have discovered that *the defendant harmed them* for a claim to accrue." *Snyder-Hill*, 48 F.4th at 702 (emphasis in original); *see also, e.g.*, *Bishop*, 618 F.3d at 536 (applying two-prong discovery rule after *Rotella*); *Campbell*, 238 F.3d at 775 (same).

This Court's well-established approach conforms with the purpose of the discovery rule: encouraging plaintiffs to pursue knowable claims while not penalizing those who, through no fault of their own, did not and reasonably could not know the defendant's role in causing their injury. *Snyder-Hill*, 48 F.4th at 698-99. OSU's preferred rule would have sweeping consequences beyond Title IX suits like this one, but its application to school sexual abuse cases demonstrates its illogic. OSU's approach would encourage universities to run out the limitations clock by covering up their quiet support for sexual predators like Strauss, *amicus* Michigan State University's Larry Nassar, and *amicus* University of Michigan's Robert Anderson. Br. of *Amici Curiae* RAINN, et al. at 13-15. If such schools were successful, victims' suits would be too late by the time they discovered the factual predicate for their claims: the defendants' deliberate indifference. *Id.* at 4-6. And, contrary to OSU's fear-

---

consistently applied the distinct discovery rule to § 1983 and other statutes silent as to accrual. *See, e.g.*, *Barrett*, 689 F.2d at 330 (applying discovery rule to § 1983 case).

mongering, many Title IX claims are quickly discoverable because plenty of schools don't engage in "decades-long cover up[s]." *Snyder-Hill*, 48 F.4th at 705. OSU might not like the Court's opinion, but it is fact-bound, and the facts are of OSU's own making. *See, e.g.*, *id.* (noting plaintiffs' inability to discover OSU's deliberate indifference).[4]

## II.    THE COURT SHOULD NOT REHEAR THIS CASE EN BANC TO RECONSIDER THE PANEL'S HOLDING ABOUT TITLE IX'S APPLICATION TO NON-STUDENTS.

In its opinion, the panel correctly held that four non-student plaintiffs could bring claims under Title IX. OSU does not even try to explain why that unremarkable conclusion warrants en banc review.[5]

1. There is no circuit split. To the contrary, if this Court adopted OSU's rule— that only students and employees may bring suits under Title IX, Opp. Br. 51-52— *that* would conflict with the law of other circuits. *See, e.g.*, *Doe v. Brown Univ.*, 896 F.3d 127, 132 n.6 (1st Cir. 2018) (holding Title IX protects, among others, "[m]embers of the public [who] . . . attend campus tours [and] sporting events" because they

---

[4] Even if successful, OSU's forfeited challenge to the "causal" prong would not resolve Plaintiffs' claims. Most Plaintiffs' claims are also timely because they had no knowledge of the injury, Opening Br. 28-32, or their claims are tolled by OSU's fraudulent concealment, *id.* at 53-58.

[5] OSU continues to assert that this question goes to "standing," Pet. 15, even though it does not, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014).

"are either taking part or trying to take part of a funding recipient"); *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1311 (10th Cir. 2012) (Gorsuch, J.) ("Title IX does not limit its coverage at all, outlawing discrimination against any 'person'"). It would also conflict with binding Sixth Circuit precedent. *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 513 (6th Cir. 1996) (noting Title IX requires "broad, institution-wide application"); *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 272 (6th Cir. 1994) (similar); *Doe v. Univ. of Kentucky*, 971 F.3d 553, 558 (6th Cir. 2020) (recognizing Title IX protects persons beyond students and employees).[6]

2. The panel's holding is required by the statute's plain text and Supreme Court precedent. Title IX provides that "[n]o *person* in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). In using the term "person," the statute's text does not limit plaintiffs to those with a particular relationship to the institution. As the Supreme Court reasoned in *North Haven Board of Education v. Bell*, "Congress easily could have substituted 'student' or 'beneficiary'

---

[6] *University of Kentucky* noted that its "decision [was] limited to the unique circumstances of this case," so did not address the full range of persons potentially protected by Title IX. *Id.* at 559 n.4. That judicial modesty does not mean, as OSU claims, that *University of Kentucky* foreclosed protections beyond that case's scope.

for the word 'person' if it had wished to restrict [Title IX's] scope." 456 U.S. 512, 521 (1982). Congress "did not limit the statute in this way and thus, Title IX's plain language sweeps more broadly." *Snyder-Hill*, 48 F.4th at 707.

Further, by statute, the entirety of a university is subject to Title IX so long as any part of it receives federal funds. Reply Br. 25-26 (citing 20 U.S.C. § 1687 (defining "education program or activity")). Title IX thus requires "broad, institution-wide application." *Claiborne Cnty.*, 103 F.3d at 513 (citation omitted); *see also Snyder-Hill*, 48 F.4th at 708 (identifying contexts beyond the classroom where Title IX applies); *Brown Univ.*, 896 F.3d at 132 n.6 (same).

OSU might like to replace "person" with "student or employee." Opp. Br. 51-52. Rewriting Title IX, though, is Congress's job, not the Court's, and certainly not OSU's. *See Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1738 (2020).

## CONCLUSION

For the reasons explained above, this Court should deny OSU's petition for rehearing en banc.

October 18, 2022

<div style="margin-left:40%">

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By:  /s/ *Ilann M. Maazel*

Ilann M. Maazel
Debra L. Greenberger
Marissa R. Benavides

</div>

600 Fifth Avenue, 10th Floor
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: mbenavides@ecbawm.com

SCOTT ELLIOT SMITH, LPA
Scott E. Smith (0003749)
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail: ses@sestriallaw.com

PUBLIC JUSTICE, P.C.
Adele P. Kimmel
Alexandra Z. Brodsky
1620 L Street NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net
E-mail: abrodsky@publicjustice.net

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 35(b)(2) because contains 3,898 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

Dated:  October 18, 2022

s/     *Ilann M. Maazel*
Ilann M. Maazel
*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 18, 2022, an electronic copy of this brief was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

s/      *Ilann M. Maazel*
Ilann M. Maazel