Nos. 21-3981/3991

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

**STEVE SNYDER-HILL, et al.,**

*Plaintiffs-Appellants,*

v.

**THE OHIO STATE UNIVERSITY,**

*Defendant-Appellee.*

_____

Appeal from the U.S. District Court for the Southern District of Ohio at Columbus
The Honorable Michael H. Watson, Nos. 2:18-cv-00736; 2:21-cv-03838

_____

***AMICI CURIAE* BRIEF ON BEHALF OF**
**MULTIPLE INSTITUTIONS OF HIGHER EDUCATION[1]**
**IN SUPPORT OF REHEARING EN BANC**

_____

James R. Saywell
JONES DAY
North Point
901 Lakeside Avenue East
Cleveland, Ohio 44114-1190
(216) 586-3939

Stephen J. Cowen
Amanda K. Rice
Andrew J. Clopton
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, Michigan 48226-4438
(313) 733-3939
scowen@jonesday.com

---

[1] Bowling Green State University; Cleveland State University; Eastern Michigan University; Board of Regents of the University of Michigan; Michigan State University; Oakland University; and Purdue University.

**DISCLOSURE STATEMENT**

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4), and Sixth Circuit Rule 26.1, counsel states as follows:

The Amici Parties comprise the following public institutions of higher education:

- Bowling Green State University, of Bowling Green, Ohio;
- Cleveland State University, of Cleveland, Ohio;
- Eastern Michigan University, of Ypsilanti, Michigan;
- University of Michigan, of Ann Arbor, Michigan;
- Michigan State University, of East Lansing, Michigan;
- Oakland University, of Rochester, Michigan; and
- Purdue University, of West Lafayette, Indiana.

None of these seven universities is a publicly owned corporation or a subsidiary or affiliate of any publicly owned corporation. And no other publicly owned corporation has a financial interest in the outcome of this appeal.

In addition, no party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund the preparation or submission of this brief. And no person other than Amici and their counsel contributed money that was intended to fund the preparation or submission of this brief.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

INTEREST OF *AMICI CURIAE* ................................................................1

REASONS FOR GRANTING THE PETITION ......................................3

I.    THREE QUESTIONS WARRANT EN BANC REVIEW ...........................3

II.   UNLESS VACATED, THE PANEL DECISION WILL CAUSE HARM......9

CONCLUSION ...........................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amini v. Oberlin Coll.*,
259 F.3d 493 (6th Cir. 2001) ...................................................................7

*Bannister v. Knox Cnty. Bd. of Educ.*,
__ F.4th __, 2022 WL 4363939 (6th Cir. Sept. 21, 2022)............................3, 5, 8

*Barnes v. Gorman*,
536 U.S. 181 (2002).................................................................................9

*Behnke v. Anheuser-Busch Com. Strategy, LLC*,
2022 WL 1658807 (S.D. Ohio May 25, 2022).........................................5

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999)...............................................................................10

*Dibrell v. City of Knoxville*,
984 F.3d 1156 (6th Cir. 2021) ...............................................1, 3, 4, 7

*Doe v. Univ. of Ky.*,
971 F.3d 553 (6th Cir. 2020) ..............................................................2, 8

*El-Khalil v. Oakwood Healthcare, Inc.*,
23 F.4th 633 (6th Cir. 2022) ...................................................................4

*Everly v. Everly*,
958 F.3d 442 (6th Cir. 2020) ..............................................................4, 6

*Forrester v. Clarenceville Sch. Dist.*,
537 F. Supp. 3d 944 (E.D. Mich. 2021) .................................................6

*Guertin v. Michigan*,
924 F.3d 309 (6th Cir. 2019) ...................................................................5

*Guy v. LFUCG*,
488 F. App'x 9 (6th Cir. 2012) ................................................................6

*J.H. v. Ohio Dep't of Job & Fam. Servs.*,
2021 WL 5240231 (S.D. Ohio Sept. 14, 2021) ...................................4, 6

*Jennings v. Univ. of N.C.*,
482 F.3d 686 (4th Cir. 2007) ...................................................................9

*Johnson v. Memphis Light Gas & Water Div.*,
777 F.3d 838 (6th Cir. 2015) ...............................................................3, 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Jones v. City of Detroit*,
   20 F.4th 1117 (6th Cir. 2021) ...................................................................9

*M.H.D. v. Westminster Schs.*,
   172 F.3d 797 (11th Cir. 1999) ...................................................................5

*Mich. Corr. Org. v. Mich. Dep't of Corr.*,
   774 F.3d 895 (6th Cir. 2014) ...................................................................2

*Mitts v. Bagley*,
   626 F.3d 366 (6th Cir. 2010) ........................................................1, 3, 4, 6

*MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*,
   43 F.4th 1259 (11th Cir. 2022) ...................................................................6

*Ohlendorf v. United Food & Com. Workers Int'l Union, Loc. 876*,
   883 F.3d 636 (6th Cir. 2018) ...................................................................8, 9

*Order of R.R. Telegraphers v. Ry. Express Agency*,
   321 U.S. 342 (1944)...................................................................10

*Rotella v. Wood*,
   528 U.S. 549 (2000)...................................................................2, 7

*Rotkiske v. Klemm*,
   140 S. Ct. 355 (2019)...................................................................4, 5, 6

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001)...................................................................3

*Varnell v. Dora Consol. Sch. Dist.*,
   756 F.3d 1208 (10th Cir. 2014) ...................................................................5

**STATUTES**

20 U.S.C. § 1681 ...................................................................9

42 U.S.C. § 1983 ...................................................................6, 7

42 U.S.C. § 2000d-7...................................................................5

**OTHER AUTHORITIES**

Samantha Harris & KC Johnson, *Campus Courts in Court*,
   22 N.Y.U. J. Legis. & Pub. Pol'y 49 (2019) ...................................................................10

## INTEREST OF *AMICI CURIAE*

The scope of the implied right of action under Title IX is an issue of immense importance to the Amici Universities; to other schools across the country; and to all those who work in, learn from, or visit these institutions. The panel opinion in this case dramatically expands that implied right of action by eviscerating the statute of limitations for Title IX claims and by extending Title IX remedies to non-students. That opinion hinges on three fundamental errors—each of which marks a departure from Supreme Court precedent and from the approach taken by most other appellate courts.

*First*, the panel majority deepened existing "tension" between this Court's caselaw (which applies the discovery rule when a statute is silent) and Supreme Court precedent (which applies "the standard rule: that a claim accrues when the plaintiff has a complete cause of action") by holding that the discovery rule applies to Title IX. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021). That ruling bears all the marks of en banc-worthiness: an erroneous decision, an "intra-circuit conflict"; a "circuit split"; "an important federal question"; and a "number of judges on the court hav[ing] come to doubt the validity of [circuit] precedent." *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, J., concurring in the denial of rehearing en banc).

1

*Second*, even assuming the discovery rule applies, the panel majority flouted the Supreme Court's mandate that "discovery of the *injury*, not discovery of the other elements of a claim, is what starts the clock."  Dissent 43 (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).  Under the panel's opinion, plaintiffs must *also know* that their injury was unlawful *and* that the defendant institution acted with deliberate indifference.  *See* Op. 31-32.  That holding has no basis in Title IX's text.  And it will invariably confuse district courts—not only in the Title IX context, but also in cases involving everything from "excessive force" to "defamation."  Dissent 41.

*Third*, the panel majority extended the implied right of action under Title IX to all "members of the public" who "access[] university libraries or other resources, or attend[] campus tours, sporting events, or other activities."  Op. 29.  In so doing, the panel majority disregarded this Court's prior "explicit[] h[oldings]" that only students (or their equivalents) have a cause of action under Title IX.  Dissent 46 (citing *Doe v. Univ. of Ky.*, 971 F.3d 553, 559 n.4 (6th Cir. 2020)).  It also ignored the Supreme Court's skepticism in recent decades of implied rights of action.  *See Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 903 (6th Cir. 2014) (collecting cases).  If Congress had any idea it was implicitly creating a private right of action when it enacted Title IX, surely it did not conceive of its extension to any spectator among the legions who attend a football game on any given Saturday.

In combination, the panel's erroneous rulings threaten grave harm thrice over to universities and the students they serve. Granting Ohio State's petition for en banc review will allow this Court to address these three issues all at once and restore order to its Title IX jurisprudence.

## REASONS FOR GRANTING THE PETITION

Amici recognize that en banc review is an extraordinary remedy. But this is an extraordinary case. Each of the three issues presented encompasses the "traditional grounds for full court review" and thus independently warrants en banc review. *Mitts*, 626 F.3d at 370 (Sutton, J., concurral). Taken together, the case for full Court intervention is overwhelming.

## I.    THREE QUESTIONS WARRANT EN BANC REVIEW.

**1.** ***Whether the discovery rule applies.*** This Court has already recognized "tension" between its discovery-rule cases and the Supreme Court's. *Dibrell*, 984 F.3d at 1162; *see Bannister v. Knox Cnty. Bd. of Educ.*, __ F.4th __, 2022 WL 4363939, at *4 (6th Cir. Sept. 21, 2022). This Circuit and some others apply "a discovery accrual rule when a statute is silent on the issue." *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001); *see, e.g.*, *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015). But the Supreme Court has never "adopted that position as [its] own," *TRW*, 534 U.S. at 27, and in recent years has consistently "started its accrual analysis with the standard rule: that a claim accrues when the

3

plaintiff has a complete cause of action." *Dibrell*, 984 F.3d at 1162. Most recently, in *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019), the Supreme Court clarified that the practice of reading a discovery rule into statutes that do not expressly call for it is "bad wine of recent vintage." *Id.* at 360. In so doing, the Court appeared to have "squelched"—once and for all—the prior "circuit evolution" toward a discovery-rule default in favor of the standard, occurrence-based rule. *Everly v. Everly*, 958 F.3d 442, 460 (6th Cir. 2020) (Murphy, J., concurring).

With this panel decision, however, that circuit evolution has returned with a vengeance. A previous panel of this Court had asked whether "cases imbibing this 'bad wine' warrant reconsideration in light of the Supreme Court's recent teachings." *Dibrell*, 984 F.3d at 1162. The panel here not only declined to reconsider those precedents in light of *Rotkiske*—dismissing *Dibrell*'s teachings as mere "musings"—but it also exported the "bad wine" to an entirely new context.

The panel decision thus creates an "intra-circuit conflict" on an issue about which a "number of judges on the court" have expressed skepticism. *Mitts*, 626 F.3d at 370 (Sutton, J., concurral). District courts had rightfully observed that the Sixth Circuit "may be shying away from the application of the discovery rule." *J.H. v. Ohio Dep't of Job & Fam. Servs.*, 2021 WL 5240231, at *2 & n.2 (S.D. Ohio Sept. 14, 2021). And some judges have not been so shy. *See, e.g.*, *El-Khalil v. Oakwood Healthcare, Inc.*, 23 F.4th 633, 635-36 (6th Cir. 2022); *Everly*, 958 F.3d at 462

4

(Murphy, J., concurring); Dissent 37. Even in the days since this panel opinion issued, this Court has again questioned the discovery rule. *Bannister*, 2022 WL 4363939, at *4, *9-10. District courts—which had been awaiting "further clarification" on whether "to employ the [discovery] rule" in the face of statutory silence, *Behnke v. Anheuser-Busch Com. Strategy, LLC*, 2022 WL 1658807, at *2 n.2 (S.D. Ohio May 25, 2022)—will now be more confused than ever.

"No less than twice the Supreme Court has told courts what to do when there is no federal statute of limitations at all": "appl[y] the occurrence rule." Dissent 37; *see Bannister*, 2022 WL 4363939, at *4. By nevertheless applying the discovery rule here, the majority did "exactly what the Supreme Court has repeatedly told us not to do." *E.g.*, *Guertin v. Michigan*, 924 F.3d 309, 317 (6th Cir. 2019) (Kethledge, J., dissenting from the denial of rehearing en banc). Worse, it engaged in "[a]textual judicial supplementation" for a private right of action that is *itself* "[a]textual judicial supplementation." *Rotkiske*, 140 S. Ct. at 361. And it ignored statutory text in which Congress referred to when Title IX violations "occur." 42 U.S.C. § 2000d-7(b).

The panel majority also deepened a circuit split. *See Bannister*, 2022 WL 4363939, at *9-10 (collecting cases). The Tenth Circuit holds that "[t]he relevant federal law on accrual [for Title IX]" is "the standard rule" rather than the discovery rule. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1210, 1215 (10th Cir. 2014); *accord M.H.D. v. Westminster Schs.*, 172 F.3d 797, 801, 803-06 (11th Cir. 1999).

And this split "span[s] many federal statutes," *Everly*, 958 F.3d at 460 (Murphy, J., concurring), including those that routinely come before this Court. *See, e.g., J.H.*, 2021 WL 5240231, at *2 & n.2 (applying same analysis under "42 U.S.C. § 1983, the ADA, [and] the Rehabilitation Act"). In the wake of *Rotkiske*, other Circuits have applied the standard rule to other statutes, too. *See, e.g., MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, 43 F.4th 1259, 1266-67 (11th Cir. 2022).

Given the "conflict," "split," "important federal question," and increasing "number of judges" who have "come to doubt the validity of [the Court's] precedent," this issue deserves full-court review. *Mitts*, 626 F.3d at 370 (Sutton, J., concurral).

**2.** ***How the discovery rule applies.*** En banc review is independently warranted because even if the discovery rule applied, the panel muddied what had been an "emphatically clear" rule: that "discovery of the *injury*, not discovery of the other elements of a claim, is what starts the clock." Dissent 43.

Before the panel's opinion this case, this Court had consistently held that the limitations clock for claims based on sexual abuse begins ticking "when the plaintiffs were abused, and not when they discovered that the defendants [allegedly] knew about [or] facilitated the abuse." *E.g., Guy v. LFUCG*, 488 F. App'x 9, 15 (6th Cir. 2012). "Clearly [the] abuse is the injury that gives rise to plaintiffs' claims," the Court reasoned, even if the plaintiffs "did not know that [a particular entity] might be liable for their injury." *Id.*; *see, e.g., Forrester v. Clarenceville Sch. Dist.*, 537 F.

Supp. 3d 944, 952-54 (E.D. Mich. 2021) (collecting cases); Dissent 45-46 (collecting out-of-circuit cases).

This Court has applied the same rule in other contexts, too—including in lawsuits against universities, cities, and employers sounding in everything from RICO and medical malpractice to "excessive force" and "defamation." Dissent 41. In all of these contexts, this Court has held that, under the discovery rule, a claim accrues "when [the plaintiff] discovers that he has been injured, not when he determines that the injury was unlawful" or whom best to sue. *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001); *see Johnson*, 777 F.3d at 843. The fact that "considerable enquiry and investigation may be necessary before [plaintiffs] can make a responsible judgment about the actionability" of an injury—including whom they can sue and whether they can state every element of a legal claim—does not affect the discovery rule's application. *Rotella*, 528 U.S. at 556-57.

The panel's opinion throws all of this precedent into question. Is the discovery rule for a § 1983 claim triggered upon the plaintiff's "knowledge that he had been arrested (allegedly wrongfully)," or on later discovery of a city custom relating to arrests more generally? *Dibrell*, 984 F.3d at 1162. What about a wrongful-death suit against an employer—does the clock begin ticking upon the employee's death, or only after the next-of-kin plaintiff discovers that some third-party premises owner allowed similar accidents to earlier occur? And what of a claim that a prison guard

7

mistreated a plaintiff-inmate—does the limitations period began to run when the mistreatment occurs, or only after the prison releases a report about the guard ten years later, explaining that he had mistreated other inmates as well?  Unless the full court steps in, there is no telling how far the panel's "new injury-and-deliberate-indifference discovery rule" will spread.  Dissent 42.

3.  ***The scope of Title IX.***  Finally, "[t]his court has explicitly held that the right to bring suit under Title IX is limited to 'those circumstances where a plaintiff is so closely tied to a university that the individual is essentially a student of that university.'"  Dissent 46 (quoting *Doe*, 971 F.3d at 559 n.4).  Even after the panel opinion, this Court continued to describe the statute as containing "an implied right of action that permits *students* to seek damages."  *Bannister*, 2022 WL 4363939, at *9 (emphasis added).

Yet the majority "expand[ed] the *scope* of Title IX" to cover a wide swath of "members of the public."  Dissent 46.  Judge Guy in dissent well explained why this was wrong.  *Id.*  And in addition to creating an intra-circuit conflict, the majority's opinion conflicts with the Supreme Court's teachings on an exceptionally important issue of federal law: how to treat statutes, like Title IX, that do not contain explicit rights of action.  As the Supreme Court and this Court has recognized time and again, implied rights are "increasingly rare creature[s]."  *Ohlendorf v. United Food & Com. Workers Int'l Union, Loc. 876*, 883 F.3d 636, 640 (6th Cir. 2018).  When they do

exist, courts must construe them narrowly, creating or expanding implied causes of action only when supported by "clear and unambiguous" statutory language. *Id.* at 641; *see Barnes v. Gorman*, 536 U.S. 181, 188 (2002).

The majority did the opposite here, extending Title IX's implied right of action to reach anyone who comes on campus. Op. 29. Title IX's text requires, however, that a plaintiff suffer "discrimination under an[] education program or activity." 20 U.S.C. § 1681(a). Looking at that language, a "school … would justifiably be surprised to learn that, by accepting federal funds, it could be subjected to" damages actions by a random "member[] of the public" on a college visit or attending a football game, Op. 29. *Jones v. City of Detroit*, 20 F.4th 1117, 1120 (6th Cir. 2021); *see, e.g.*, *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (requiring a Title IX plaintiff to allege that "she was a student at an educational institution receiving federal funds"). Full-court review will head off the difficult line-drawing problems district courts will face in applying the panel's new standard, as well as align this Court with the proper view of Title IX—and of implied causes of action more generally.

## II.    UNLESS VACATED, THE PANEL DECISION WILL CAUSE HARM.

In combination, the panel's answers to these three questions threaten serious harm to universities and students, all without input from "the democratic process." Dissent 47.

9

Even as universities continually improve their policies, they have over time faced a growing number of Title IX lawsuits. *See, e.g.*, Samantha Harris & KC Johnson, *Campus Courts in Court*, 22 N.Y.U. J. Legis. & Pub. Pol'y 49, 50 (2019). The panel opinion will exponentially increase that number, as decades-old allegations and non-student theories of liability inevitably proliferate. "The cost of defending against" these additional lawsuits "alone could overwhelm many school[s]"—to say nothing of the "limitless liability" that could result. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 680-81 (1999) (Kennedy, J., dissenting).

This is particularly true with respect to decades-old allegations. Statutes of limitation "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944). By effectively eviscerating the statute of limitations for Title IX claims, the panel's opinion puts schools in the impossible position of being forced to defend against claims where the only evidence remaining may well be the plaintiff's own say-so.

To be sure, universities can and should seek to right past wrongs of their own volition. But the panel opinion may have the perverse effect of deterring universities from doing just that. After all, according to the panel majority the limitations clock

began to run in this case only when the results of an independent investigation were publicly released.  Op. 23; Dissent 45.  Independent investigations are a valuable tool—they can uncover past wrongdoing, promote transparency, facilitate voluntary reconciliation, and improve processes to prevent future harms.  But if the cost of such investigations is near-limitless liability on decades-old allegations, schools may well hesitate to undertake them in the future.

## CONCLUSION

For these reasons, as well as those given in the petition, this Court should grant Ohio State's petition for rehearing en banc and vacate the panel opinion.

Dated: October 3, 2022                    Respectfully submitted,

/s/ *Stephen J. Cowen*
Stephen J. Cowen
Amanda K. Rice
Andrew J. Clopton
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, Michigan 48226-4438
(313) 733-3939
scowen@jonesday.com

James R. Saywell
JONES DAY
North Point
901 Lakeside Avenue East
Cleveland, Ohio 44114-1190
(216) 586-3939

*Counsel for Amici Curiae*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed R. App. P. 29(b)(4) because it does "not exceed 2,600 words"—specifically, it contains 2,599 words (excluding the parts of the brief exempted), as counted using the word-count function on Microsoft Word software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman style, 14-point font.

Dated: October 3, 2022          /s/ *Stephen J. Cowen*
                                Stephen J. Cowen

## **CERTIFICATE OF SERVICE**

On October 3, 2022, the foregoing brief and its corresponding statements and certificates was filed via the Court's electronic filing system.  All participants in the case are registered users of the ECF system and will be served electronically via that system.

Dated: October 3, 2022            /s/ *Stephen J. Cowen*
                                                    Stephen J. Cowen

13